[Filed April 11, 1892.]

## R. M. DAVISSON ET AL. *v.* WM. MACKAY ET AL.

EQUITABLE LIEN — PRIOR EQUITY — DORMANT JUDGMENT.—A party in possession of land under a defective deed, and having an equitable lien thereon for the purchase price paid by him, being otherwise without notice, is not affected by a subsequent suit to subject the land to the payment of a judgment against one who is alleged to have advanced the money for the conveyance to the grantor in the defective deed, but who by the record is a stranger to the title, especially where the judgment was dormant when the possession began under the defective deed.

Benton county: M. L. PIPES, Judge.

Defendants appeal.    Affirmed.

*J. W. Rayburn,* for Appellants.

*John Burnett, John Kelsay,* and *W. S. McFadden,* for Respondents.

LORD, J.—This is a suit for an injunction to enjoin the sale of certain real property described in the complaint upon an execution issued in favor of B. F. Dunn and against one W. H. Huffman.    The facts show that one Kenoyer in the year 1876, as owner, conveyed the land in question to Mary E. Huffman, and that the said Mary sold the same to Alex. Wood, who went into possession in July, 1881; but that the deed being defective failed to convey the title to him; that in 1876 the said Mary conveyed to E. L. Rayburn the legal title of the land in dispute; that he sold the same to his father, S. Rayburn, and that in 1888 the aforesaid Wood commenced a suit against Rayburn, whereby he procured a decree declaring the purchase price paid by him to Mary E. Huffman a lien on said land, and directing that the same be sold to satisfy the lien; that in August, 1889, the land was sold at sheriff's sale under a decree, and the plaintiffs became purchasers, and went into possession under their certificate from the sheriff, and that since then they have received a deed from him.    It also appears that the defendant Dunn secured a judgment in 1877 against W. H. Huffman, and that the execution in this case, which is sought to be enjoined, was issued upon said judgment by leave of the court.    This judgment was docketed in 1877 and again in 1889.    It further appears that in October, 1881, the defendant Dunn brought suit against W. H. Huffman and Mary E. Huffman to subject the land in question to the payment of his judgment of 1877 against W. H. Huffman, alleging that the said Huffman had paid the whole price therefor, and that the grantor Kenoyer had

made the deed to Mary at the instance of her husband, who intended thereby to defraud Dunn of his demand. This suit was pending several years, but it seems that a decree was entered in 1886 declaring the deed void, and that the judgment of 1877 be satisfied out of the land. There is some dispute regarding the regularity of this decree, and it is not clear from it how the land, when the deed was declared void without putting the title in Huffman, could be subjected to the lien of the judment. But it is not material to consider this aspect of the question, as it is the execution issued upon the judgment of 1877, which after becoming dormant was revived in 1889, that is sought to be stayed.

As the evidence in *Wood* v. *Rayburn*, 18 Or. 1, is stipulated to apply to this case, it is important to notice that it was held in that case that the defendant Rayburn had notice of the rights of the plaintiff, because (1) Mrs. Huffman was not in possession of the property at the time of its conveyance to the defendant Rayburn, and (2) because the plaintiff Wood was in possession at the time of the transfer, which was notice to the defendant Rayburn of his equities. The land then in dispute is the land involved in this suit. So that it may be said of that case, that it was the want of possession of the party conveying, and the actual possession of Wood at the time of such conveyance, that constituted notice of his equities. The facts show that Wood was in possession of the property in July, 1881, and that the suit of Dunn to set aside the deed was commenced subsequently, in October, 1881. As the record stood, Wood had no notice of the lien of the judgment as against the property in question, and of which he was in possession. Nor when the suit was brought and the lien declared against the property did Dunn have any lien against it; until so declared or when declared, if it related back to the date of the judgment, it did not affect any intervening rights which had been acquired without notice of it. There

was nothing to put Wood on inquiry or to affect him with notice of any equitable rights that Dunn had at the time he went into possession of the property under his defective deed. So that when Dunn commenced his suit and several years thereafter procured a decree that the property should be sold for the payment of his lien, such sale must necessarily have been made subject to Wood's equities. Whatever rights or equities, therefore, that the defendant Dunn established by his suit, was with notice of the equities of Wood and subject to them.

As the plaintiffs have succeeded to all the legal and equitable rights of Wood, it results that their equities are superior to any equities that the defendant Dunn acquired by his suit. Nor is this all. When Wood commenced his suit against Rayburn to enforce his lien against the land in question on account of his purchase from Mary E. Huffman, as decreed in *Wood* v. *Rayburn, supra*, the defendant Dunn's judgment against Huffman had been dormant several months and was no lien on anything. So that in whatever way we may regard the facts of this case, we are unable to discover any error.

The decree must be affirmed.